IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

DAVID S. MACKENZIE,       )
                                 )
        Plaintiff,          )   TC-MD 110686D
                                 )
     v.                 )
                                 )
KLAMATH COUNTY ASSESSOR,  )
                                 )
        Defendant.     )   **DECISION**

Plaintiff appeals the 2010-11 real market of property identified as Account R894283 (subject property). A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on November 8, 2011. Plaintiff appeared on his own behalf. Becky Robison (Robison), Senior Data Analyst, Klamath County Assessment and Taxation, and Margaret Kenneally (Kenneally) appeared on behalf of Defendant. Robison was called by Plaintiff as a witness.

Plaintiff's Exhibits 1 through 6 and 7.3 and Defendant's Exhibits A through G were received without objection.

## I. STATEMENT OF FACTS

Plaintiff testified that he purchased the subject property along with two other parcels in August, 2010. He testified that the subject property and other two parcels were listed for sale in April, 2010, for $87,500. (Ptf's Ex 4.) Plaintiff testified that the subject property's listing price was reduced to $54,900 in August, 2010. (*Id*.) He testified that at the end of August, 2010, he made an offer and "closed" on the subject property in September, 2010, paying $51,100 for the subject property and two other parcels. Plaintiff testified that he allocated $9,168 of his purchase price to the subject property. (*Id*. at 2.) Plaintiff requests that the 2010-11 tax roll show a real market value of $9,168.

Kenneally testified that she has "12 to 15 years" appraisal experience and has worked for Defendant more than "30 years." She testified that she inspected the subject property, researched land sales, confirming that the sales "were good, not repos or bank sales," and prepared a comparable sale analysis to confirm the county's 2010-11 real market value of $46,940.[1] (Def's Ex D-1.) Kenneally testified that all the comparable properties are lots zoned "residential" and available for "one homesite per parcel." Kenneally testified that she made only two adjustments to the sale prices. One property selected by Kenneally as comparable to the subject property had a "paved road; access to the subject property is not via a paved road. (*Id.*) Kenneally adjusted the comparable property's sale price $5,000 for a paved road. (*Id.*) Another property selected by Kenneally as comparable to the subject property was substantially larger (.87 acre) than the subject property (.28 acre). (*Id.*) Kenneally adjusted the comparable property's sale price $10,000 for size. (*Id.*) Kenneally made no other adjustments to the comparable properties' sale prices. Plaintiff asked Kenneally why she did not adjust comparable properties' sale prices from the sale date to the assessment date when "values are falling like a rock." Plaintiff testified that Kenneally ignored "30 percent of the market." Plaintiff disputed that the comparable properties are located within "two miles" of the subject property. Kenneally testified that all the comparable properties are located in south Klamath Falls.

Robison testified that a "good sale" meets the "ORS standard of arm's length sale between knowing buyer and seller." She testified that for the county's ratio study, the county "ignores short sales, bank-owned property sales and foreclosure sales." Robison testified that a "bank sale" is a "distressed type sale" and Plaintiff's purchase of the subject property was a "bank repossession/foreclosure sale." She testified that as of January 1, 2010, "30 percent of

---

[1] For tax year 2010-11, the subject property's maximum assessed value and assessed value were $30,620. (Def's Ex A-2.)

market" was "bad sales," specifically bank-owned or foreclosure sales. Plaintiff testified that with "30 percent of the market" sales of bank-owned properties or foreclosure sales he is being "taxed for something he doesn't own, taxed on blue sky." Plaintiff testified that the sale of a house "similar to his property" sold for substantially less than the real market value on the tax roll and the "assessments in Klamath County" are "incorrect." Robison testified that the sale referenced by Plaintiff occurred in 2010 and the county did not "look at 2010 sales" in determining the subject property's real market as of January 1, 2010. She testified that "values" are "trending down" and the subject property's real market value has been reduced in 2010-11 and 2011-12.

## II. ANALYSIS

The issue before the court is the 2010-11 real market value of undeveloped land. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Under ORS 308.205(1)[2], real market value is defined as: "*** the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

A. *Approaches of Valuation--Real Market Value*

The three different methods used to determine real market value are 1) the cost approach, 2) income approach, and 3) sales comparison or market approach. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). When determining the real market value of a property, the three different

---

[2] References to the Oregon Revised Statutes (ORS) are to year 2009.

approaches to valuation must all be considered, even if one of the approaches is found to be unreliable. *See* ORS 308.205(2); OAR 150-308.205-(A)(2). Plaintiff did not present evidence using any of the three approaches.

Kenneally used a sales comparison approach to determine the subject property's real market value. A comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management Corp v. Lane County Assessor,* TC-MD No 060354D at 6 (Apr 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Kenneally selected three properties that she concluded were comparable to the subject property. She made an adjustment to the sale price of one comparable property for size and to another for access. Kenneally made no time adjustment to the sales that closed in January 2009, June 2009, and September 2009, even though Defendant lowered subject property's real market value on the tax roll by 23 percent between January 1, 2009 and January 1, 2010. Kenneally's indicated market values ranged from $40,000 to $50,000. (Def's Ex D.) Adjusting Kenneally's indicated market value for time, the indicated real market values range from $36,933 to $42,480.

B. *Burden of Proof*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must

establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.

Plaintiff failed to use any of the three common approaches prescribed by statute to determine the real market value the subject property. Plaintiff did not provide the court with any evidence from a real estate expert or reliable market evidence to support the requested reduction in real market value.

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry his burden of proof.

Even though the burden has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties". ORS 305.427; ORS 305.412. Defendant relied on the comparable sale approach. Kenneally made two adjustments to the sale prices but failed to make the most substantial time adjustment. Adjusting Kenneally's indicated market value for time, the

indicated real market values range from $36,933 to $42,480. Even if the court were to conclude that the subject property's real market value is at the low end of the range, that real market value would be more than the 2010-11 maximum assessed value and assessed value on the tax roll. The court has no information to conclude that there would be a change in Plaintiff's property taxes for tax year 2010-11 based on the court's determination of real market value at the low end of the range. Based on the evidence before the court, Plaintiff would not be aggrieved and court cannot order a change in real market value. ORS 305.275.

C. *Purchase Price*

When determining real market value, the sale price of a recent, voluntary, arm's-length sale of property between a willing and knowledgeable buyer and seller is also very persuasive of real market value, albeit, not conclusive. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973); s*ee also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 415, 521 P2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-115.

Plaintiff's purchase, which closed on September 30, 2010, was almost nine months after the January 1, 2010, assessment date. Plaintiff's purchase was not recent in relation to the assessment date.

In considering a sale, the next issue is whether the sale was an arm's-length transaction. At the time of Plaintiff's purchase, the subject property was a bank-owned property. This court has observed that:

> "property purchased through foreclosure may well involve an element of
> compulsion on the part of the seller. There are many practical reasons why the
> sale of a property following foreclosure by the lender might involve an atypical
> market condition rendering the transaction of little or no value as an indication of

market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property."

*Kryl v. Lane County Assessor*, TC-MD No 100192B at 6-7 (Mar 30, 2011). In *Kryl*, this court gave little weight to a bank-owned sale in which the bank sold the property within a few months after acquiring it. As this court observed, a bank sale conducted with such rapidity suggests duress or compulsion on the part of the seller, leading the court to conclude such sales are not indicative of an arms-length transaction.

In the case before the court, the subject property and two adjoining parcels were listed for sale in April, 2010, four months after the assessment date at a listing price less than the real market value listed on the tax roll. Four months later, the listing price was reduced $32,600 or more than 37 percent of the listing price. Plaintiff purchased the subject property at a price that was an additional seven percent less than the reduced listing price.

Plaintiff testified that his purchase was an arm's length market transaction. Plaintiff offered no explanation why in less than four months the seller was willing to accept a purchase price approximately 42 percent less than the original listing price for not only the subject property, but two other parcels that was substantially less than the tax roll value. Plaintiff submitted no evidence that Defendant's comparable properties selling at substantially higher prices were other than arm's length market transactions. Given that Plaintiff's purchase of the subject property occurred more than eight months after the assessment date, the subject property's listing price was substantially reduced over a relatively short period of time (four months) and Plaintiff's purchase occurred

within days of the listing price being reduced 37 percent at a price seven percent less than the listing price, the court concludes that Plaintiff's reliance on his purchase to the exclusion of other similar property sales to determine real market value is misplaced.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of January 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on January 10, 2012. The Court filed and entered this document on January 10, 2012.*